HEATHER E. WILLIAMS, #122664
Federal Defender
DOUGLAS J. BEEVERS, #288639
Assistant Federal Defender
Designated Counsel for Service
801 "I" Street, 3rd Floor
Sacramento, CA 95814

Attorney for Defendant
SETH BERTOLINI

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>      v.<br><br>SETH BERTOLINI,<br><br>                      Defendants. | NO. 2:14-cr-00260 TLN<br><br>FORMAL OBJECTIONS TO PRE-SENTENCE REPORT<br><br>DATE:  May 21, 2015<br>TIME:   9:30 a.m.<br>JUDGE: Hon. Troy L. Nunley |

Defendant, by and through counsel, formally objects to the following paragraphs of the Pre-Sentence Report:

**1. Objection to Drug Weight Calculations, Paragraphs 5-8 and 14-24**

Mr. Bertolini objects to the Probation Officer's drug weight calculations for including alleged liquid heroin which has never been tested or even measured. The Pre-Sentence Report omitted the fact that Officer White's report notes that he did not do any tests of the suspected liquid heroin found in the apartment, and he did not measure the quantity of liquid found in the dish:

> I tested the tar heroin found on top of a band aid box in the master bedroom, it tested presumptive positive and had a total net weight of one gram. The suspected liquid heroin found at the residence was located in a hypodermic syringe in the laundry room and in a glass dish in a cupboard in the kitchen. The liquid heroin in the syringe measured approximately 30 cc's while the liquid heroin in the glass dish was four to five times that much. I did not get an approximate measurement of heroin in the glass dish due to not having the proper

Formal Objections                                    -1-

>measuring equipment at the time. I did not perform a presumptive test on either of the suspected liquid heroin samples but based on my training and experience concluded that they were likely both heroin.

Officer White Police report p. 2/USAO #001188, attached herein as Exhibit A. Officer White's opinion was that the presence of needles, heroin, and cotton balls in the residence suggested Mr. Bertolini was a heroin user, but "the packaging material combined with the large amount of heroin found on his person at the time of arrest suggests he also possessed it for sale." *Id*. Nowhere does Officer White suggest that the glass dish full of 120-150 cc of suspected liquid heroin was packaged for sale.

Mr. Bertolini contends that Officer White misunderstood a 100 unit syringe to be a 100 cc syringe when actually this 100 unit syringe contains only 1 cc of liquid or 1 gram. Since the syringe could only contain 1 gram of liquid, the officer's estimate that the liquid contained 4 or 5 times the 30 units would result in a total of 1.5 grams of total water weight not 150 grams as is calculated in the Pre-Sentence Report.

Mr. Bertolini conceded in his plea agreement that he possessed 35 grams of heroin for sale. This amount of heroin falls in level 16 (20-40g of heroin). The probation officer is recommending that the court increase the offense level from level 16 up to level 24 based on a finding that a glass dish full of an unmeasured quantity of an untested liquid contained heroin.

In order to increase the guidelines from level 16 to 24, the Court would need to make a factual finding supported by clear and convincing evidence, because the guideline increase from level 16 to 24 increases the guidelines from 46-57 months up to 100-125 months. *See United States v. Gonzalez,* 492 F.3d 1031, 1039 (9th Cir.2007)(holding a five level increase which doubles the guidelines requires clear and convincing evidence); see also *United States v. Restrepo*, 946 F.2d 654 (9th Cir. 1991)(en banc)(holding clear and convincing evidence required where the fact-finding would increase guidelines by 5 levels or more). The Ninth Circuit recently reaffirmed its holding that clear and convincing evidence is required to support factual findings which double the guidelines sentence. *See United States v. Gardenhire*, 2015 WL

Formal Objections                                           -2-

1934493(9th Cir. Apr. 30, 2015)(reversing a 9-level enhancement for insufficient evidence to support the enhancement.)

The Ninth Circuit explained, in remanding a case for resentencing, a "[d]rug quantity calculations" cannot rest on "unsupported assumptions*.*" *United States v. Rosacker*, 314 F.3d 422, 425 (9th Cir. 2002). While establishing a defendant's drug quantity can be an art, rather than an exact science, this is not a license to engage in 'nebulous eyeballing.' *United States v. Coleman*, 528 F. App'x 599, 601 (7th Cir. 2013) (internal citations omitted*); see also United States v. Howard*, 80 F.3d 1194, 1204 (7th Cir. 1996).

In Mr. Bertolini's case, the Pre-Sentence Report calculation would require the court to extrapolate from the lab tests on powder heroin found in baggies in the car to make a finding that untested liquid found in a dish in a residence was also heroin for sale. This method of extrapolation has been rejected by many courts of appeal. In order to extrapolate from such a sample, the government must "demonstrate an adequate basis in fact for the extrapolation and that the quantity was determined in a manner consistent with the accepted standards of [reasonable] reliability." *United States v. Scalia*, 993 F.2d 984, 989 (1st Cir.1993) (*quoting United States v. McCutchen*, 992 F.2d 22, 25-26 (3d Cir.1993)); *see also United States v. Jackson*, 470 F.3d 299, 310-11 (6th Cir. 2006); *United States v. Diaz*, CR 05-0167 WHA, 2006 WL 3512032 (N.D. Cal. Dec. 6, 2006).

The Sixth Circuit explained that for sentencing, this standard is met "where a preponderance of the evidence demonstrates that (1) a proper random selection procedure was employed; (2) the chemical testing method conformed with an accepted methodology; (3) the tested and untested samples were sufficiently similar in physical appearance; and (4) the tested and untested samples were contemporaneously seized at the search scene." *Jackson*, *supra*, 470 F.3d at 311 (*quoting Scalia*, 993 F.2d at 989 (quoting *McCutcheon*, 992 F.2d at 25-26)); *see also United States v. Ellis*, 193 F. App'x 773, 779 (10th Cir. 2006).

**2. Objection to "maintaining a drug residence", Paragraphs 5 and 15.**

Defense objects to the Pre-Sentence Report adding +2 levels under §2D1.1(b)(12) based on the officer's suspicion that Mr. Bertolini "maintained a premises for the purpose of

manufacturing or distributing a controlled substance." The only evidence connecting the residence to drug dealing is the fact that plastic baggies and a spare gun were stored there. Mr. Bertolini objects that the Probation Officer has no evidence to prove that there was 140 cc of liquid heroin, because the 140 cc liquid was not measured or tested in any way other than the officer's suspicions that it might contain heroin. Section 2D1.1(b)(12) was new to the November 2011 Guidelines Manual, and it implemented a directive from the Fair Sentencing Act, which directed the Sentencing Commission to add a two-level enhancement "as generally described in ... (21 U.S.C. [§ ] 856)." Fair Sentencing Act of 2010, Pub.L. No. 111–220, § (6)(2), 124 Stat. 2372, 2373 (2010). Title 21 U.S.C. §856 makes it illegal to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1). Unlike §856, U.S.S.G. § 2D1.1(b)(12) only applies if the premises is maintained for distribution or manufacturing of drugs, not for the mere personal use of drugs:

> "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance," including storage of a controlled substance for the purposes of distribution."

U.S.S.G. § 2D1.1(b)(12) & comment. (n.17). Application Note 17 to § 2D1.1 provides that the court should consider "whether the defendant held a possessory interest in ... the premises" and "the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1, comment. (n. 17). The application note further states that:

> [m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

§2D1.1 note 17.

The Ninth Circuit held that 21 U.S.C. §856 requires proof that the defendant in fact exercised dominion and control over the premises and the contraband found there. *See United States v. Vasquez–Chan*, 978 F.2d 546, 549–51 (9th Cir.1992). The Eleventh Circuit explained

that "an isolated instance of use, distribution, or manufacture is not a violation" of this 21 U.S.C. §856, because continuity of purpose was an element, and merely living at a stash house is not sufficient, because dominion and control must be proved. *United States v. Clavis*, 956 F.2d 1079, 1090-91(11th Cir. 1992) certiorari denied 112 S.Ct. 2979,

In Mr. Bertolini's case, the Probation Officer has presented no evidence to show Mr. Bertolini distributed drugs from the residence. Paragraph 5 correctly shows Mr. Bertolini caught in the act of trying to sell from his car 35.6 grams of heroin, which was packaged in the typical way in 18 separately packaged baggies. Inside the car he had a gun with him for protection, and a digital scale. A search of the text messages on his cell phone showed that he sold drugs by having people call him on his cellphone. There was no evidence to suggest his for-sale heroin was ever in the residence. Paragraphs 64-80 show Mr. Bertolini has a serious drug addiction problem, which supports the inference that the drug use paraphernalia – syringes and cotton balls – were for his own personal use. Paragraph 8 includes a statement from Mr. Bertolini's girlfriend that she did not know of anyone else living in the residence at the time it was searched. If Mr. Bertolini were staying in that residence alone then there is no evidence whatsoever to suggest he was sharing the needles that were found there with anyone else in the apartment.

In applying enhancements, the district court may rely on undisputed statements in the Pre-Sentence Report at sentencing. *United States v. Charlesworth*, 217 F.3d 1155, 1160 (9th Cir. 2000). However, if a defendant objects to a fact in the Pre-Sentence Report, the district court must resolve the factual dispute. Fed.R.Crim.P. 32(i)(3)(B). The Government must prove a disputed fact for the court to base an offense level increase on that fact. *United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir. 1990). It is reversible error for the district court to simply rely on the disputed fact from the Pre-Sentence Report. *United States v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005). The district court is also barred from "adopt[ing] conclusory statements unsupported by facts or Guidelines." *United States v. Navarro*, 979 F.2d 786, 789 (9th Cir. 1992). Due Process requires a defendant to be sentenced with accurate information. *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358 (1980).

In this case there is virtually no evidence that Mr. Bertolini exercised dominion or control over the place where he was living. Even if the court could find dominion and control, there is no evidence that the place was actually being used for distribution of drugs rather than merely for personal use of drugs.

Defendant requests a hearing in which he will present the testimony of Federal Public Defender Office Investigator Henry Hawkins to testify that in his experience as a Chicago Police Officer he was familiar with the typical packaging of drugs for sale and that a glass dish is not typically used for distributing heroin. Defense also requests that the alleged liquid heroin be brought to court along with the heroin syringe that allegedly contained liquid heroin.

Dated: May 6, 2015

>       Respectfully submitted,
>
>       HEATHER E. WILLIAMS
>       Federal Defender
>
>       */s/ Douglas Beevers*
>       DOUGLAS BEEVERS
>       Assistant Federal Defender
>       Attorney for Defendant
>       SETH BERTOLINI